Good afternoon, your honors. May it please the court. Ryan Azad for petitioner Yaine Reyna Sanchez. I'll aim to reserve three minutes for rebuttal. Right, I'll try to remind you, but keep your eye on the clock as well. Thank you. The undisputed evidence in this case shows that the Cuban government arrested and detained Ms. Sanchez twice, beat her to unconsciousness, deprived her of water for three days, and repeatedly threatened to imprison and murder her if she didn't change her political views. Well, when you say the undisputed evidence, you mean the undisputed evidence other than her signed sworn statement? Your honor, I'm referring to the fact that this is based on Ms. Sanchez's testimony. Right, but you said the undisputed evidence. It is disputed because she signed a statement where it says, why did the police beat you? Because I sold food without a permit. It's the only way to survive. Why were you arrested? Because I was selling food without a permit. So it's only undisputed if we disregard that. So, your honor, two points. First, I don't think the fact that she signed that statement disputes the evidence that she was beaten and that she was detained twice. No, but you said it was on account of her political views. It was undisputed. Sure, and to that point, your honor, the immigration judge expressly asked Ms. Sanchez about this statement at her hearing, and Ms. Sanchez denied that she said that. She said there was some miscommunication. Yeah, but that means he found her credible, and that means he found that she believed she was saying, but if she had testified that the Union has 48 states, she's credible, but that doesn't mean Hawaii is not a state. Sure, your honor, and your point is well taken, but based on this evidence, the BIA affirmed the IJ's denial of Ms. Sanchez's claims for asylum, withholding of removal and protection under the Torture Convention. Based on its findings at AR-76, that there is a lack of evidence that anyone in Cuba is interested in harming Ms. Sanchez. Those rulings are grievously wrong, and there are at least two reasons that this court should reverse. First, the agency legally erred by concluding that the harm inflicted by the Cuban government didn't constitute persecution or torture and didn't give rise to a well-founded fear of future persecution or a likelihood of persecution. Our best case, your honor, is Man with Zeon versus Ashcroft, and in that case, as we explained in our briefs, is on all fours with this case, this one in many respects. The petitioner there was also arrested by police after participating in an anti-government rally, beaten to unconsciousness, also arrested a second time, similar to Ms. Sanchez, and repeatedly threatened after his release from custody. In fact, our facts are even more harsh than those in Man with Zeon, because in Man with Zeon, I believe after the second arrest, the petitioner testified that he was beaten for about 20 minutes. Here, Ms. Sanchez testified that she was deprived of water during her three-day detention, and to your point, Judge Bennett, about those facts compelling the conclusion that there's past persecution, that's precisely what this court said in Man with Zeon. Any reasonable fact-finder would be compelled to conclude that the petitioner suffered past persecution, and the same should be true here. There's also a second case, if you'll allow me to proceed, and those are this court's decisions in Prada and Gafoor. There, this court said that a beating severe enough to render someone unconscious is clearly sufficient to show past persecution. And here, Ms. Sanchez testified— But isn't there a difference between clearly sufficient to show it and compelling that conclusion? I don't believe so, Your Honor. I'm not familiar with any of this court's cases that have drawn that distinction, and what I am familiar with is this court's law that says establishing past persecution gives rise to a rebuttable presumption of future persecution. Right, I don't think anybody disagrees with that, but here we have, as the IJ found at AR-71, they beat her, spit in her face, and left her unconscious, that those facts compel the adjudicator to find past persecution. I do believe, Your Honor, that Prada and Gafoor are on point with that, but what I would urge this court to do, rather than considering these incidents in isolation, is, as Mamouzian said, to consider the cumulative effect of the harm inflicted on Ms. Sanchez. And here, we have testimony that she was arrested, detained, beaten to unconsciousness, just three days after that, arrested a second time, admittedly, I should note, in retaliation for her government protest. Counsel, let me, before you run out of time, I want to make sure that you have an opportunity to address more fully the nexus issue. So let's assume for a moment that the harm inflicted on her rose to the level of persecution. I'm really interested in hearing more your perspective in response to Judge Bennett's inquiry when he started out with what she said to the Border Patrol agent. And the IJ picked up on that. I'm looking at the excerpts of record, page 76, where the IJ said, the respondent speculates that the police will harm her if she does. But this speculation is unsupported by the record. It's quite conceivable that she was, in fact, arrested for selling food without a permit, as she originally told the immigration agent. So the IJ, on the one hand, found that she did testify credibly in material respects, but on the other hand, really focused on the statement that she had initially given, attributing her arrest to selling food without a permit. So how do you address that issue? Sure, Your Honor. So first I'll note that in cases such as Lopez and Arradondo, this Court has said that the agency needs to engage in a substantive analysis of the decision that's sufficient to announce its terms in a way that provides for meaningful appellate review. The agency here, you're right, picked up on this nexus issue, but gave very stray and conclusory remarks regarding it. But even turning to the merits, assuming the agency sufficiently discussed it, I think the case is based on Ms. Sanchez's political views. The suffering inflicted on her began, she testified at AR-127 and 128, after she held up a sign denouncing the Castro regime. There was no... Right, right. But the IJ also talked about that. It's not just the fact that the IJ picked up on her own statement that she was arrested because she was selling food without permit, but the IJ also talked about how kind of untethered her claim is from the reality of the record. She was able to come and go freely from Cuba. She stayed in the same hometown. So other than that one incident when she was out publicly protesting, holding up the sign, there was no indication that the government was interested in pursuing her in any way. So that's a more, I think, substantive analysis than you give the IJ credit for. Sure, Your Honor. And I think there's a factual and a legal error there. So factually, that's incorrect that there was only one manifestation of anti-government activity, and you only need to look to AR-131 to 132 to find that. When the officers arrested her the second time at Ms. Sanchez's restaurant, they did so admittedly for being against the government and doing a demonstration in public. Ms. Sanchez also testified that when she, after she returned from Cuba after her first escape and found an officer wearing the clothes that they had stolen from her, she expressed... But counsel, I'm looking at the report, I mean the signed statement AR-168, have you ever been arrested by the police? Yes, in Cuba. Why were you arrested in Cuba? Because I was selling food without a permit. So she certainly testified as to why she thought she was arrested, but she gave a sworn statement when she was asked, why were you arrested? And she'd already said she'd been arrested several times because I was selling food without a permit. So I'm having trouble seeing how the record compels the agency to take as fact her testimony, I was arrested because of my anti-government protests, as opposed to her sworn statement, why were you arrested, quote, because I was selling food without a permit. Judge Bennett, I think the best response to that is to look at the evidence of the, again, the cumulative harm inflicted on her. Before that incident, before she was selling food, she was arrested, beaten to unconsciousness for protesting against the government and holding an anti-government sign. After that incident, Ms. Sanchez repeatedly testified that she was threatened with terms of long imprisonment and with death, and in each of those threats, the government expressly referenced her political views. It didn't say anything about selling food without a permit. According to her, her testimony, but according to her in her written statement, when they asked, why were you arrested? After she'd already said she was arrested several times because I was selling food without a permit. So, I mean, I think the agency... I think I have a question, if I could interject. Yes, of course. My question is, even if the prompt for the arrest was that she was selling food without a license, could she still be persecuted in the way she was treated after her arrest? The extended duration of the arrest, did you have any beatings that occurred? I want to make sure I understood your question, Judge Gould. Are you asking that even if she was indeed arrested once for selling food without a permit, could she have also been persecuted and tortured for her political opinion? Right, that's my question. Okay, yes, and the answer is yes, and we discussed this in our reply brief, actually. So, the one central reason standard that this court announced in Garcia versus Wilkinson, this court made very clear that it can be one central reason, even if other factors played. The necessary inquiry is whether the Cuban government in this case would have harmed Ms. Sanchez, but for her political opinion. And again, Judge Bennett, to your question, I think the record evidence compels the conclusion that the answer to that is no, they wouldn't have, because she was initially arrested and detained after protesting against the government. Yes, there was an incident at her restaurant where I, you know, I can acknowledge there's some conflicting testimony between her statement and her testimony before the IJ, but after that incident, she was repeatedly, for a period of seven months, threatened with imprisonment and death, and those all made reference to her political views. I see that I'm past my time. I know, our very active questioning this afternoon took you over time, but I'll make it up to you and add a couple of minutes on the clock. I appreciate that, Judge Nguyen. Thank you. All right, let's hear from the government. Good afternoon, Your Honors. May it please the Court, Shirley Clemons on behalf of the Attorney General of the United States. Can the Court hear me okay? Yes. Thank you. The petition for review should be denied in this case. Substantial evidence supports the agency's decision to deny Ms. Sanchez's request for asylum with burden of proof. Beginning with her request for asylum based off past persecution, first of all, the government asserts and maintains that she failed to exhaust that particular argument. She also failed to exhaust any argument that she suffered, that she could show a well-founded fear of future persecution. Her notice of appeal was bare-bones and provided the agency in this case with very little information about what issue she's raising. I agree that pro se litigants are held to a lower standard as far as notice. They're still required to put the BIA on some sort of notice as to what issues are raising so that the BIA can pass on them. In this particular case, the government has raised this issue, and while there is no longer a jurisdictional bar to it, it is still a statutory claims processing rule. Which issue did the BIA not have an opportunity to address? Your Honor, we believe that they did not address specifically the past persecution or the future persecution. In their order, they specifically say that she failed to meaningfully contest IJ's finding that she had not suffered harm rising to the level of persecution or established a well-founded fear of future persecution on counterprotected ground. And they did note that the few things that she did say weren't sufficient to persuade the court that the factual findings were erroneous, but she really never raised to the court exactly what factual findings that she believes were erroneous or that the IJ erred in not finding that she did not meet her burden of establishing past persecution. Your Honor's counsel, why should we not remand to the agency for further proceedings so that the agency can explore those issues? Now when she makes a claim that BIA is aware of, then she wants asylum. Doesn't that give her notice that she thinks she's being persecuted and has a reasonable fear of future persecution? Well, what this court has required, Your Honor, for instance, in Zangerfuss, Ashcroft, is at least a very minimum notice that they're seeking relief based off the IJ's denial of asylum, fully removal, or torture. She didn't even say that. She merely asked that her case be assessed and take into account arguments that she made about her circumstances. If, in fact, she failed to exhaust... Yes, Your Honor? In your brief, you fully addressed the merits, though, correct? We do, Your Honor. So should this court find that, in fact, the issues were exhausted because either because she did raise them or because the court did, the IJ, I'm sorry, the board did address them, then this court should still deny her request for relief because based off the record, no reasonable adjudicator would be compelled to conclude that she suffered harm rising to the level of past persecution. Persecution is an extremes concept. We do acknowledge that with that first arrest, she was taken into custody, it was a beating, she was left unconscious on the floor, held for 24 hours. Meeting to the point of unconsciousness and being deprived of water for three days seems pretty extreme. Well, first of all, those are two different instances. Second of all, in the first instance, the first arrest, there was absolutely no evidence presented that she had to seek medical attention, that she suffered any significant harm as a result of this. She basically said she woke up with a headache and some bruises. While I agree that's abhorrent, and I certainly don't defend the actions of the Cuban government, this court has held that not all circumstances that cause a petitioner physical discomfort or loss of liberty necessarily qualify as persecution, despite the fact that they may have caused petitioner some harm, citing the Halo versus Ashcroft. The key question is whether looking at the cumulative effect of all incidents she suffered, does that treatment rise to the level of persecution? And I'd also note on the second arrest, yes, she was held for three days, but again, no evidence of physical water caused her harm or that she needed to seek medical attention. So, yes, sir? In this case, the acts against Ms. Sanchez were far less severe than those suffered by other applicants, where this court has found the act did not arise to the level of persecution. So, for instance, in the Prasad case cited in our brief, in that case, there were four arrests, three detentions, and one beating, and this court found that did not constitute persecution. In CJLG, there was multiple years of physical abuse where no physical harm was suffered, and the court found not persecution, despite the fact that they were death threats against that young man's family. And finally, in GU, where that particular individual was hit ten times with a rod, interrogated, was held three days in jail, but because no medical treatment and not charged with any crimes, and there was no significant physical harm, the petition was denied. Yes, she was harmed in this case, but there wasn't significant harm. Counsel, so I have this question for you. Wouldn't she threaten with death? Yes, Your Honor, there were threats of death, but in this case, whether or not the threats are sufficient, I think the record demonstrates that the court would not be compelled to find that this was a different result, because this court has held that threats in and of themselves don't necessarily constitute persecution, unless there's such a point that they bring about significant actual suffering or harm. Threats without more, threats without follow-through, are merely harassment. They're hollow threats, and what we have on this record is a situation where she says she was threatened multiple times repeatedly, although it's very vague on the record how long that lasted or how many threats there were. She just said multiple times, but there was never any follow-through. She was never taken in custody again after that second arrest. She was allowed to leave the country and go back and forth without being harmed, so never any instance or reason to believe or in a cumulative analysis to say that all of that led to the very high level of proving past persecution. But even if this court finds that there's past persecution, in this particular case, she's also failed to establish nexus, that is, that she was persecuted on account of a protected ground, in this case, her political opinion. As this court noted, and as IJ noted, what she stated in her sworn statement when she was taken in custody by Bortscholl, that her arrests were due to selling food without a license, not because of her political opinion. And in this case, for instance, the second arrest was taken into place during a time when they had inspected her restaurant and gave her a ticket, and she protested against getting that ticket, and then they took her into custody. But they did release her later without making her pay the fine or even sign the ticket. But on that record, there's nothing, because that is in the record, and the court has found her to be credible, that doesn't mean that they negate the other statements that she made, there is nothing in the record that would compel this court to say that any acts of harm against her were done solely because of her political opinion. Any harm against her doesn't, as I understand a lot, doesn't have to be done solely because of political reason. All it has to do is to be a central reason. That is correct, Your Honor, and I misspoke, I apologize. And so in this particular situation, you know, we had two disputes about what that one central reason was, but the IJ found that the central reason was that it was conceivable that it was due to the fact that she was selling food without a license, as she said in her first statement to Border Patrol. That is supported by the record, and the record doesn't compel otherwise. Your Honor, counsel, let me ask you a question on that. To me, that makes sense. How often are people beaten to unconsciousness in Cuba because of selling, looking, merchandise without a license? Your Honor, I don't have an actual statistic to support one way or the other, but I'm sorry, this is Cuba, they don't treat people very well there, but this falls into the kind of that court erred in finding that one central reason was because, in fact, she was selling food without a license. It's still her burden to prove. The difficulty that I have with that argument, counsel, is that the IJ found her credible in material respects, and what that suggests to me is that her testimony regarding what the officer said to her about her political opinion that, you know, this is how we treat traitors and the like, that the IJ found all of that to be credible. So how is that not sufficient to show that her political opinion was one central reason for the mistreatment? Well, again, the fact that they found her credible as her testimony doesn't negate her credibility as her previous statement that she was, in fact, arrested for selling food without a license. In that first statement, she never said, my arrests were due to the government, or that I defied them and gave my opinion. Well, you know, I'm not sure that there's an inconsistency there. Perhaps the IJ accepted the fact that she was arrested because she was selling food without a license, but her mistreatment was really motivated by her political opinion based on what the officers were saying to her, and so I don't see the two as being necessarily inconsistent. And if the IJ found her credible in all material respects, then why can't we look at the record in the way that I've just articulated? Because a finding of credibility doesn't turn this into an all-or-nothing situation. The IJ still had to find whether or not her testimony was persuasive, and the IJ was free to credit all or part of it despite the finding of credibility. And in this case, she was also free to credit this contradictory statement about the reasons why she was actually harmed. In this case, it really makes no difference when the issue is whether or not the facts demonstrate she's persecuted on behalf, on a protected ground, not whether the fact actually occurred. And so this court is not required, despite that finding of credibility, to give conclusive weight to any fact that cuts against the agency's finding. In this case, there was an agency finding that is supported by the record, and there's nothing else in the record that compels the opposite conclusion. I see that I'm well out of time for the questions. You're over time, but I just want to make sure that Judge Bennett and Judge Gould have all of their questions answered, Judge Bennett. Yes, thank you. Judge Gould, do you have any additional questions? I have a modest question. Somewhere in the record, I read that she said that she was she'd be disappeared, and used the term disappeared. And my questions are, first of all, what does that term, slang term, mean? Does it mean killed? Will you be disappeared? And second, isn't it reasonable to infer from her testimony that being disappeared would not be a consequence of selling goods without a license, but rather a consequence of being perceived as a traitor because of her anti-government activities? So, to answer the first question, disappeared, yes, I totally believe that that's a death threat. We heard that in other cases, that's what it would be. But I would note, in that particular instance, that was not a situation where an officer sought her out or came to her home to say, hey, we hear you're still making political statements, you need to stop or you're going to disappear you. That was a situation where she sought out the officer. She saw him on the street wearing the clothes that she believed he had taken from her residence, and I'm sure he had, and she confronted him, and that's when he made the threat. So, in that case, changing her opinion is not necessarily changing her opinion against the government, it's changing her opinion that she didn't like the fact that he stole her clothes, and she told him that that was very disrespectful. So, I don't believe that that particular instance necessarily shows a nexus. Okay, thank you. All right, thank you very much, Councilor Fjordman. Let's put a couple of minutes on the clock. Thank you, Your Honors. Judge Benet, I want to take one more stab at answering your questions about the nexus. So, I think if you look at AR-175, this is the country conditions evidence, that states that it is against the law in Cuba to abuse, physically, detainees. So, even if we were to think that Ms. Sanchez was arrested for selling food without a permit, that directly contradicts her treatment while in custody, being beaten to unconsciousness, deprived of water for three days. Those are not permissible treatments of detainees in Cuba. I presume they're not permissible under the law, no matter what somebody's arrested for. That's right, Your Honor, but I think that treatment rebuts the conclusion that she was arrested for some lawful purpose, such as selling food without a permit in violation of the country rules. I want to briefly address opposing counsel's point that she didn't seek medical attention. That argument runs headlong into this Court's precedent in cases such as Goh, Nyingadai, Mijalev, where this Court said that even when there are no long-term effects and the petitioner does not seek medical attention, her suffering can rise to the level of persecution, and that's exactly what we have in this case. Third, regarding the threat. So, I agree with opposing counsel that this Court has held in some cases that threats alone don't constitute persecution. The reason that doesn't control here is this is a much different case. Here, the Cuban government repeatedly threatened Ms. Sanchez after they had already detained her twice, beaten her to unconsciousness, and deprived her of water for three days. As this Court said in Aiden, the relevant question when assessing whether threats arise to the level of persecution or torture is whether the government actor imposing the threats has demonstrated their ability to carry them out. And here, the Cuban government had already imprisoned Ms. Sanchez and had beaten her with physical violence. That shows that they were capable of carrying out those threats. I also want to correct the record. Opposing counsel mentioned that Ms. Sanchez sought the officer who threatened her with death out. That's not correct. I believe that's confusing the two threats that she received. So, the threat of long 15 years or more of imprisonment was when Ms. Sanchez approached the officer. But the threat of death at AR-147, Ms. Sanchez testified that officers drove by her home and threatened her with death during that time. I see I'm over my time, so I'll stop there. All right. Thank you very much, counsel, to both sides for your argument. And thank you, Mr. Azad, for taking this case pro bono. Thank you. You've been very helpful to the Court. Then the matter is submitted for decision by the Court, and we are adjourned. All rise.
judges: GOULD, NGUYEN, BENNETT